```
              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MAINE


Jeffrey Bennett and
The Bennett Law Firm, P.A.
                                    ME Civil No. 04-cv-212-GNZ
     v.                             NH Civil No. 04-ds-401-PB


St. Paul Fire and Marine
Insurance Co.
```

### MEMORANDUM AND ORDER

Jeffrey Bennett and the Bennett Law Firm, P.A., claim that their former insurer, St. Paul Fire and Marine Insurance Company ("St. Paul"), breached its contractual duty to defend under two professional liability policies. The parties have filed cross motions for summary judgment. For the reasons set forth below, I grant St. Paul's motion in part and deny plaintiffs' motion.

### I. BACKGROUND

Bennett is an attorney in Maine and a principal in the Bennett Law Firm. St. Paul issued two successive professional

liability insurance policies to the Bennett Law Firm[1] that were effective from February 12, 2000 until February 12, 2003.[2]

Bennett's coverage claim arises from his representation of Darlene Copp in her divorce and spousal tort actions against her former husband, Scott Liberty ("Liberty"). Liberty's uncle, Michael Liberty ("Michael"), initially retained Bennett to represent Copp in the divorce action and promised to pay her legal fees. After a fallout with Copp in 2001, Michael stopped paying Copp's legal fees and subsequently helped Liberty pursue a variety of actions against Bennett based on events that occurred during and after the divorce proceedings.

On September 1, 2004, plaintiffs initiated the current insurance coverage suit in Maine Superior Court. The action was removed to the United States District Court in Maine and subsequently transferred to this court.

---

[1] The first policy was issued to Bennett, Bennett and Troiano, P.A., which was the predecessor to the Bennett Law Firm.

[2] Policy number 506JB5307 was effective from February 12, 2000 to February 12, 2002. Policy number DR00601805 was effective from February 12, 2002 to February 12, 2003. For ease of reference, I will cite the copies of the policies provided by St. Paul that have been consecutively paginated. See Second Aff. of Michael Spinelli (dated December 19, 2005), Ex. A and B.

### A. Liberty's complaints against Bennett

On January 4, 2002, Liberty filed a Protection from Harassment (PFH) complaint against Bennett. Bennett sent a copy of the complaint to St. Paul, which accepted its duty to defend Bennett and retained Attorney Jeffrey Thaler to defend the PFH complaint. The complaint was dismissed on March 1, 2002.

Liberty filed a second PFH complaint against Bennett in April 2002. He also instituted an adversary proceeding against Bennett in his Chapter 13 bankruptcy proceeding and sent a complaint letter about Bennett to the Board of Overseers of the Maine Bar. Bennett tendered copies of all three complaints to St. Paul. Michael Spinelli, a claim specialist at St. Paul, then retained Attorney John Whitman to advise St. Paul as to whether it had a duty to defend Bennett in these actions. On May 2, 2002, Whitman sent a letter to Bennett stating that St. Paul acknowledged its duty to defend him in the PFH and bankruptcy proceedings, but disclaimed any duty to defend him on the Bar complaint.[3]

---

[3] Liberty allegedly filed thirteen Bar complaints against Bennett between December 29, 2000 and March 8, 2004. Bennett Dep. Ex. 2 (Answer to Interrog. 4). According to St. Paul, Bennett only tendered a copy of the April 2002 complaint letter.

-3-

On July 25, 2003, Liberty filed a thirteen-count complaint against Bennett in the Superior Court of Cumberland County, Maine (the "Superior Court action"). Bennett Dep. Ex. 45. In the complaint, Liberty alleged that Bennett maliciously instituted civil and criminal proceedings against Liberty, caused him to be arrested and unlawfully detained, threatened him, made false and defamatory statements about him, and unlawfully entered Liberty's house and stole his personal property. Id. ¶¶ 110-85. Bennett tendered the complaint to St. Paul,[4] which retained Attorney Thaler to defend the action.

**B.   Bennett's counterclaim and third-party complaint**

In addition to tendering the defense of the Superior Court action to St. Paul, Bennett also sought coverage for a counterclaim he planned to file against Liberty in that case. The proposed counterclaim alleged that Liberty intimidated and harassed Bennett by threatening him and his family with physical harm, invading Bennett's privacy, filing wrongful and frivolous civil proceedings and defamatory Bar complaints against Bennett,

---

[4] Bennett tendered the defense of these claims to St. Paul in 2002 when a copy of the draft complaint was submitted as an exhibit in the bankruptcy court action. Bennett Aff. Ex. 4 (letter from Whitman to Bennett dated June 4, 2002).

-4-

making defamatory statements about him on the Internet, and attempting to have Bennett charged with multiple crimes. Bennett Aff. Ex. 11. St. Paul advised Bennett that although it would defend him against Liberty's complaint, he would need to retain counsel at his own expense for any counterclaims or third-party claims he planned to file. Bennett Aff. Ex. 4, at 4. Bennett never filed the counterclaim.

On or around August 5, 2003, Bennett filed a third-party complaint against Michael Liberty in the Superior Court action. Bennett Aff. Ex. 10. The third-party complaint alleged that Michael breached his agreement to pay Copp's legal expenses and committed various torts against Bennett, including assault, battery, defamation, malicious prosecution, and intentional infliction of emotional distress. Id. ¶¶ 82-192. In the final count of the third-party complaint, Bennett sought contribution from Michael for any liability he owed to Liberty on the basis that Michael provided false information to Bennett, committed some of the acts alleged against Bennett and attributed false statements to Bennett.[5] Id. ¶ 198.

---

[5] On or around August 2, 2005, Bennett filed but later withdrew an amended third-party complaint that did not include

-5-

## C.   Request for transcripts

In February 2004, Attorney Thaler, who was retained by St. Paul to represent Bennett in the Superior Court action, asked St. Paul to pay for transcripts of the Copp-Liberty post-divorce proceedings in preparation for Bennett's upcoming depositions. Thaler Aff ¶ 6.  Bennett believed that statements he had made in the Copp-Liberty proceedings might be used later to impeach his deposition testimony.  Spinelli denied the request and told Thaler that he believed Bennett was "looking for a creative way to get someone else to pay for" the transcripts.  Bennett Dep. Ex. 6 (emails from Spinelli to Thaler).

In June 2004, Bennett's personal counsel, Attorney Richard Campbell, again asked Spinelli to authorize payment for the transcripts.  Bennett Dep. Ex. 10 (letter from Campbell to Spinelli dated June 15, 2004).  Attorney Whitman, writing on behalf of St. Paul, responded that St. Paul would not pay for the transcripts because most of the trial testimony appeared to be unrelated to Bennett and Bennett did not testify in the proceedings.  Bennett Dep. Ex. 12 (letter from Whitman to

---

the contribution count.  Bennett Dep. Ex. 47.

-6-

Campbell dated June 30, 2004). At the same time, Whitman told Thaler, "if you should change your mind and decide that you have an urgent need of the transcript for purposes of defending Bennett, then please give me a call and I will listen carefully to what you say." Bennett Dep. Ex. 11 (letter from Whitman to Thaler dated June 30, 2004). Whitman claims that Thaler did not respond. First Whitman Aff. (dated Dec. 20, 2005) ¶ 8.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

**B.    Duty to defend**

Under Maine law, "[w]hether an insurer has an obligation to defend its insured against a complaint is a question of law." Elliott v. Hanover Ins. Co., 711 A.2d 1310, 1312 (Me. 1998). Maine courts determine the duty to defend by "comparing the allegations in the underlying complaint with the provisions of the insurance policy." State Farm Mut. Auto. Ins. Co. v. Montagna, 874 A.2d 406, 408 (Me. 2005) (quotation omitted). "A duty to defend exists if a complaint reveals a potential that the facts ultimately proved may come within the coverage." Id. (quotation omitted). Any ambiguity in the insurance policy must be resolved in favor of finding a duty to defend. Mass. Bay Ins. Co. v. Ferraiolo Constr. Co., 584 A.2d 608, 609 (Me. 1990).

### III.  ANALYSIS

Bennett claims that St. Paul breached its duty to defend him by refusing to (1) pay the cost of prosecuting any counterclaims or third-party claims in the Superior Court action;[6] (2) pay for

---

[6] See Second Am. Compl. counts I, III, IX.

-8-

transcripts in the Copp-Liberty post-divorce proceedings;[7] and (3) provide a defense for the Bar complaints.[8]  I address each issue in turn.

## A.     Counterclaims and third-party claims

Bennett argues that St. Paul's duty to defend encompasses the prosecution of counterclaims and third-party claims that are "defensive" in nature.  Bennett's draft counterclaim in the Superior Court action alleges that Liberty committed various torts, including intentional infliction of emotional distress, assault, defamation and civil conspiracy.  Similarly, Bennett's third-party complaint accuses Michael of committing various torts against Bennett and breaching his agreement to pay Copp's legal expenses.  Bennett argues that these claims are essential to his defense because they could reduce or offset his liability and will put pressure on Liberty to dismiss or settle his claims.

---

[7] See Second Am. Compl. counts I, II, IX.

[8] See Second Am. Compl. counts I, IV, IX.  The parties agree that all other claims have been withdrawn or rendered moot, except for plaintiffs' request for attorney's fees if they prevail in this action.

-9-

The 2002-2003 policy[9] describes St. Paul's duty to defend as follows:

> We will have the right and duty to defend any protected person against a claim or suit for loss covered by this agreement. We will have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent. We will not have a duty to perform any other acts or services.

Policy DR00601805 at 48. Likewise, "defense expenses" are defined as "all fees, costs and expenses that result directly from the investigation, adjustment, settlement, defense or appeal of a specific claim or suit." Id. at 46. The terms "defend" and "defense" are not defined in the St. Paul policies.

Although Maine courts have not addressed the issue,[10] numerous jurisdictions have held that the insurer's duty to defend generally does not extend to prosecuting claims for

---

[9] The 2000-2002 policy contains similar language. Policy 506JB5307 at 6.

[10] The Maine Supreme Judicial Court recently held that a corporate officer's defense of a corporation in a civil action pursuant to 4 M.R.S.A. § 807(1) may not include the filing of a counterclaim on behalf of the corporation. Carey v. Indian Rock Corp., 863 A.2d 289, 290 (Me. 2005). The court reasoned that "[a] counterclaim is a separate claim for relief, and thus a corporation must retain counsel in order to assert a counterclaim." Id. Although this case does not dispose of the issue before me, it suggests that Maine courts would take a similar view of counterclaims in the context of an insurer's duty to defend.

affirmative relief. See, e.g., Spada v. Unigard Ins. Co., 80 Fed. Appx. 27, 29 (9th Cir. 2003) (unpublished) (holding that counterclaims and cross-claims do not come within the common meaning of "defense"); James 3 Corp. v. Truck Ins. Exchange, 91 Cal. App. 4th 1093, 1104 (2001) ("[T]here is nothing in the policy that contractually obligates [the insurer] to fund and prosecute an insured's affirmative relief counterclaims or cross-complaints."); Int'l Ins. Co. v. Rollprint Packaging Prods., Inc., 728 N.E.2d 680, 694 (Ill. App. Ct. 2000) (finding that insured's counterclaim was not defensive in nature); Red Head Brass, Inc. v. Buckeye Union Ins. Co., 735 N.E.2d 48 (Ohio Ct. App. 1999) (holding that insurer is not obligated to pay expenses for prosecuting compulsory counterclaim); see also Windt, Insurance Claims and Disputes § 4:41 (4th ed. 2001) ("An insurer, being obligated only to defend claims brought 'against' the insured, is not required to bear the cost of prosecuting a counterclaim on behalf of the insured.").

Bennett relies on cases from other jurisdictions that have extended the duty to defend to affirmative claims that are "reasonable and necessary to limit or defeat liability," Oscar W. Larson Co. v. United Capitol Ins. Co., 845 F. Supp. 458, 461

-11-

(W.D. Mich. 1993), aff'd, 64 F.3d 1010 (6th Cir. 1995); or are "inextricably intertwined with the defense," Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F. Supp. 324, 334 (E.D. Pa. 1991), rev'd in part on other grnds., 961 F.2d 209 (3d Cir. 1992) (table);[11] or seek third-party contribution or indemnification, Great West Cas. Co. v. Marathon Oil Co., 315 F. Supp. 2d 879, 882 (N.D. Ill. 2003).

Following this line of cases, Bennett argues that his counterclaim against Liberty arises from the "same core of operative facts" as Liberty's complaint and therefore is "inextricably intertwined" with his defense. Pls.' Mot. for Summ. J. at 16. Liberty's complaint alleges that Bennett committed various torts against Liberty between March 2000 and May 2003. Bennett Dep. Ex. 45. In his counterclaim, Bennett makes a general allegation that Liberty intimidated and harassed him through threats and defamatory statements and by instituting frivolous proceedings against him. Bennett Aff. Ex. 11, at ¶¶ 10-11. The only specific allegations in the counterclaim are

---

[11] See also TIG Ins. Co. v. Nobel Learning Comm., Inc., No. CIV.A. 01-4708, 2002 WL 1340332, at *15 (E.D. Pa. 2002); Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co., 229 F. Supp. 2d 284, 289 (S.D.N.Y. 2002).

-12-

that Liberty made defamatory statements about Bennett in October 2001, September 2004 and October 2005.  Id. ¶¶ 25-26, 32. Although Bennett's counterclaim may put pressure on Liberty to abandon or settle his case, the counterclaim primarily seeks affirmative relief based on allegations that are only tangentially related to Liberty's complaint.  I therefore find that Bennett's counterclaim is not "inextricably intertwined" with his defense.  Cf. TIG Ins. Co., 2002 WL 1340332, at *15 (finding that claim seeking declaration of copyright ownership is inextricably intertwined with defense of copyright infringement claim).

Similarly, Bennett's third-party complaint primarily alleges that Michael breached his agreement to pay Copp's legal fees and worked in concert with Liberty to intimidate and harass Bennett. Bennett Aff. Ex. 10.  Bennett also seeks contribution from Michael for any liability he owes to Liberty.  Id. ¶¶ 198-200. Although some of these claims relate to allegations in Liberty's complaint, Bennett has not demonstrated that they will diminish or defeat Liberty's claims against him.  At most, Bennett seeks to shift the burden of his liability to Michael by arguing that Michael induced him to act or provided him false information.

See id. ¶ 198. St. Paul, however, accepted its duty to defend Bennett in the Superior Court action and thus retained the right to control the defense strategy. Cf. Aerosafe Int'l, Inc. v. ITT Hartford of the Midwest, No. C-92-1532 MHP, 1993 WL 299372, at *5 (N.D. Cal. July 23, 1993) (noting that insurer who refuses tender of defense gives up the right to control the underlying litigation); see generally 20 Eric Mills Holmes, Holmes' Appleman on Insurance § 130.11 (2d ed. 2002). There is no authority to support Bennett's argument that Maine would follow the minority of jurisdictions that require insurers to prosecute third-party claims under these circumstances.

Finally, Bennett argues that St. Paul has a duty to prosecute his counterclaim and third-party complaint because St. Paul has a "right of recovery" for any loss that Bennett recovers from someone else. See Policy DR00601805 at 39. Bennett's argument is without merit because this policy provision only gives St. Paul the right to recover any losses paid on the insured's behalf. Id. This provision, when read in light of the policy as a whole, does not expand the scope of St. Paul's duty to defend.

-14-

Accordingly, I grant St. Paul's motion for summary judgment on this issue.

**B.** <u>**Transcripts**</u>

Next, Bennett argues that St. Paul breached its duty to defend him by refusing to pay for transcripts of hearings in the Copp-Liberty post-divorce proceedings.[12]  Bennett maintains that he needed the transcripts to prepare for his depositions in Liberty's suit against him and Michael Liberty's suit against Copp to recover legal fees he paid on her behalf.  Bennett Aff. ¶¶ 29-30.  Spinelli, the St. Paul claim specialist assigned to Bennett's case, denied the request because he believed that Bennett actually wanted the transcripts to prepare for an appeal of the decision in the Copp-Liberty case.  He maintains that he made his decision "based on what transcripts seemed reasonably necessary for the defense of the insureds."  Spinelli Aff. ¶ 11.

An insurer's duty to defend commonly requires it to pay all expenses that are "reasonable and necessary" to the defense.  <u>See, e.g.</u>, <u>Aerojet-General Corp. v. Transport Indem. Co.</u>, 948 P.2d 909, 920 (Cal. 1997); <u>Employers Ins. of Wausau v. Recticel</u>

---

[12] According to his affidavit, Bennett requested transcripts of 11 hearings, totaling $3,264.50.  Bennett Aff. ¶ 30.

Foam Corp., 716 N.E.2d 1015, 1027 (Ind. Ct. App. 1999). St. Paul's Litigation Management Plan, which is given to retained defense counsel, states that it will pay "legal fees and associated litigation expenses that are reasonable, necessary and appropriate under the circumstances." Because there is a genuine dispute as to whether the transcripts were necessary for Bennett's defense in the Superior Court action, summary judgment on this claim is not appropriate.

**C. Bar complaints**

Bennett claims that St. Paul breached its contractual duty to defend him by refusing to provide representation for the complaints Liberty filed with the Board of Overseers of the Maine Bar. The policies' coverage for disciplinary proceedings is separate from the duty to defend the insured against a claim or suit,[13] and is limited to expenses that "result from the investigation, settlement, defense, or appeal of any disciplinary proceeding." Policy DR00601805 at 48.[14] A disciplinary

---

[13] A "claim" is defined as "a demand that seeks damages;" a "suit" is defined as "a civil proceeding that seeks damages." Policy DR00601805 at 46.

[14] St. Paul initially contended that the first policy (number 506JB5307) did not provide any coverage for disciplinary

-16-


proceeding is defined as "any <u>formal scheduled hearing</u> by any bar association . . . to investigate any charges alleging professional misconduct in performing legal services." <u>Id.</u> (emphasis added).

St. Paul maintains that it did not have a duty to defend Bennett against any of the Bar complaints[15] because none of them have risen to the level of a formal scheduled hearing and thus do not fall within the policy's definition of a disciplinary proceeding. Bennett does not claim that the Board of Overseers scheduled formal hearings for any of the Bar complaints. Nonetheless, he argues that because he was required to respond to every complaint, St. Paul should reimburse him for the time he and another attorney spent preparing and submitting evidentiary materials, transcripts, witness statements and affidavits. Bennett Dep. at 81-82; Second Bennett Aff. ¶ 16.

---

proceeding expenses. For purposes of this motion, St. Paul now concedes that both policies provide the same coverage.

[15] Bennett has identified five bar/grievance complaints filed by or on behalf of Liberty during the St. Paul policy periods. Bennett Aff. ¶ 34. Four of the complaints were dismissed and one remained pending as of December 2005. Except for the April 10, 2002 complaint letter that Bennett tendered to St. Paul, he has refused to detail the substance of the complaints because of confidentiality concerns.

Bennett mistakenly conflates St. Paul's duty to defend him against claims seeking monetary damages with the more limited coverage provided under the policies for disciplinary proceeding expenses. Under the unambiguous terms of the policies, St. Paul is only obligated to reimburse disciplinary expenses incurred in the investigation, settlement, defense, or appeal of a formal scheduled hearing to investigate charges of misconduct. Thus, the coverage provided for disciplinary proceeding expenses is only triggered if a formal hearing is scheduled. Because Bennett has not set forth any evidence that a formal hearing was scheduled for any of the Bar complaints, I grant St. Paul's motion for summary judgment on this claim.

Finally, Bennett claims that St. Paul violated Maine's Unfair Claims Settlement Practices Act, 24-A M.R.S.A. § 2436-A, by knowingly misrepresenting that the 2000-2002 policy did not provide coverage for disciplinary proceeding expenses.[16] Pls.' Mem. of Law in Opp. to Mot. for Summ. J. at 13-14, 18. Bennett claims that after he tendered a copy of the April 10, 2002 Bar complaint to St. Paul, Spinelli told him that he "had no

---

[16] As noted above, St. Paul concedes for purposes of the pending motions that both policies provided the same coverage.

-18-

'disciplinary proceeding expense' coverage within his policy." Id. at 14.  Even if this allegation is true, Spinelli's statement did not form the basis of St. Paul's rejection of the tender of defense.  In a letter dated May 2, 2002, St. Paul disclaimed its duty to defend the Bar complaint because the conduct alleged did not come within the terms of coverage for disciplinary proceedings provided under the 2002-2003 policy.  Bennett Dep. Ex. 26.  I thus conclude that Bennett has failed to state a claim for relief under § 2436-A and St. Paul is entitled to summary judgment on this issue.

## IV.  **CONCLUSION**

St. Paul's motion for summary judgment (Doc. No. 45) is granted in part and denied in part.  Plaintiffs' motion for partial summary judgment (Doc. No. 49) is denied.[17]  The only remaining issues are whether St. Paul breached its duty to defend by refusing to pay for the requested transcripts and, if

---

[17] Plaintiffs' motion to strike the affidavit of John Whitman (Doc. No. 66) is denied as moot because St. Paul withdrew the contested portions of the affidavit.  See Def.'s Mem. in Opp'n to Pls.' Mot. to Strike at 2.  Plaintiffs' request for oral argument (Doc. No. 68) is also denied because it will not assist in resolution of the motions.  See LR 7.1(d).

plaintiffs prevail on that issue, whether they are entitled to attorney's fees incurred in this declaratory judgment action.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge
District of New Hampshire
Sitting by Designation

May 12, 2006

cc: Jens-Peter W. Bergen, Esq.
    Anne H. Cressey, Esq.
    John S. Whitman, Esq.
    US District Court – ME, Clerk